# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LILLIAN MORROW,  
    Plaintiff,

Case No. 1:20-cv-162  
Litkovitz, M.J.

    vs.

WAL-MART STORES  
EAST, LP,  
    Defendant.

**ORDER**

Plaintiff Lillian Morrow brings this premises liability action alleging that defendant Wal-Mart Stores East, LP ("Wal-Mart") breached its duty of care after she was injured when a water bottle case allegedly fell and hit her in the shoulder and back.  (Doc. 2).  This matter is before the Court on Wal-Mart's motion for summary judgment (Doc. 24), plaintiff's response in opposition (Doc. 25), and defendant's reply memorandum (Doc. 30).

## I.  Undisputed Facts

This lawsuit arises out of an incident that occurred at the City of New Boston Wal-Mart on April 30, 2019.  (Doc. 2 at PAGEID 23).[1]  On that date, plaintiff went to Wal-Mart to shop for groceries.  (Doc. 23, Pltf. Depo. at PAGEID 73, 74).  Plaintiff was familiar with that particular store as she went to that location "[a]bout three times a week."  (*Id.* at PAGEID 73). After shopping for groceries, plaintiff went to the aisle where the cases of water were stored. (*Id.*).

---

[1] The Court notes that plaintiff's complaint, defendant's motion for summary judgment, and plaintiff's response in opposition all refer to the incident date as April 30, 2019.  Plaintiff's deposition, however, references April 20, 2019 as the date of the incident.  (Doc. 23 at PAGEID 73).  For the purposes of the motion for summary judgment, the Court will refer to the incident date as April 30, 2019.

The cases of water bottles arrive by truck where employees pull out the cases of water with a pallet jack from the receiving docks and then place them into the aisle.  (Doc. 26-2, VanMatre Depo. at PAGEID 159).  The cases of water are wrapped in plastic shipping wrap when they initially arrive at the store.  (*Id*.).  The employees remove the plastic before taking the cases out into the aisle.  (*Id*. at PAGEID 159-60).  The water bottle cases "are usually not messed up when we [Wal-Mart employees] put them out there.  When they come in [] the truck, they are solidly stacked.  They don't have an issue with falling over or anything like that."  (*Id*. at PAGEID 160).  The pallets of water are brought out into the store "[a]s they sell."  (*Id*. at PAGEID 161).

The parties disagree as to how high the cases of water bottles were stacked on April 30, 2019.  According to plaintiff, the cases were stacked "very high on the shelves[.]"  (Doc. 23, Pltf. Depo. at PAGEID 74).  Plaintiff testified that the cases were stacked taller than her—plaintiff is five feet four inches tall.  (*Id*. at PAGEID 76).  Defendant, however, disagrees with plaintiff's testimony.  Defendant attaches a photograph allegedly depicting the scene of the incident to its motion for summary judgment and argues that "the water bottle cases were not stacked unreasonably high or even in the manner which plaintiff described."  (Doc. 24 at PAGEID 88).

Plaintiff bent over to retrieve a case of water when she felt something hit her on the shoulder and back.  (Doc. 23, Pltf. Depo. at PAGEID 73-74).  Plaintiff explained that the water bottle case fell and hit her on the top part of her back in the middle of her spine.  (*Id*. at PAGEID 71, 77).  Plaintiff "tried to holler for help, but [her] voice was too weak[.]"  (*Id*. at PAGEID 73).  Plaintiff then "blacked out."  (*Id*. at PAGEID 73, 74).  Plaintiff was eventually placed in a chair and taken to the hospital by ambulance.  (*Id*. at PAGEID 73-74, 76-77).  Sometime later, plaintiff had surgery for the injuries she sustained in the incident at Wal-Mart.  (*Id*. at PAGEID 77-79).

Plaintiff alleges she suffered "severe and permanent injuries, including but not limited to a T12 compression fracture, along with other injuries." (Doc. 2 at PAGEID 23).

## II. Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd*, No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

## III. Resolution

### A. Law governing negligence causes of action

Plaintiff asserts a single negligence claim against Wal-Mart. (Doc. 2). To establish a negligence claim under Ohio law, the plaintiff must establish that: (1) the defendant owed a duty of care to plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach was both a but-for and proximate cause of the plaintiff's injuries. *Hernandez-Butler v. Ikea U.S. East, LLC*, 435 F. Supp. 3d 816, 822 (S.D. Ohio 2020) (citing *Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 122 (Ohio 2009)). *See also Weber v. Menard, Inc.*, No. 3:13-cv-229, 2014 WL 4965940, at *2 (S.D. Ohio Oct. 3, 2014). "Premises liability is a specific type of negligence claim based on an injury that arises out of a condition on the property as opposed to an injury arising out of the activity or conduct that created the condition." *DeBusscher v. Sam's East, Inc.*, 505 F.3d 475, 479 (6th Cir. 2007).

4

When the negligence occurs in the premises liability context, "the duty that a premises owner owes under Ohio law turns on whether the injured person is an invitee, licensee, or trespasser." *Hernandez-Butler*, 435 F. Supp. 3d at 822. *See Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 723 (6th Cir. 2012); *Lang*, 909 N.E.2d at 122-23.  "[A] business invitee is a person who is on the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." *Mosholder v. Lowe's Home Ctr., LLC*, 444 F. Supp. 3d 823, 827 (N.D. Ohio 2020). *See also Mota v. Gruszczynski*, 968 N.E.2d 631, 636 (Ohio Ct. App. 2012) (internal citation and quotation marks omitted) ("Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner.").  It is undisputed that plaintiff was a business invitee of Wal-Mart. (*See* Doc. 2 at PAGEID 23; Doc. 24 at PAGEID 85; Doc. 25 at PAGEID 103-04).  Wal-Mart, therefore, owed plaintiff a duty to exercise ordinary care and to maintain the premises in a safe condition. *Mosholder*, 444 F. Supp. 3d at 823; *Andler*, 670 F.3d at 723; *Lang*, 909 N.E.2d at 123.

### B.  Analysis

Defendant puts forth four bases in support of their motion for summary judgment: (1) plaintiff's testimony is contradicted by a photograph and therefore cannot be considered under the "physical facts rule"; (2) plaintiff fails to identify how or why the water bottle case fell; (3) Wal-Mart owed plaintiff no duty of care because any danger was "open and obvious"; and (4) Wal-Mart did not breach any duty of care because Wal-Mart neither created the alleged hazard, had actual knowledge of the hazard, nor had knowledge that the hazard existed for a sufficient length of time.  (Doc. 24 at PAGEID 84-85).

### 1. **Physical evidence**

Defendant first argues that the physical evidence, a photograph, renders plaintiff's testimony inadmissible under the "physical facts" rule.  (*Id*. at PAGEID 87-89).  Defendant specifically argues that plaintiff's testimony that the water bottle cases were "stacked too high— five feet four inches" is "impossible based on the display" as exhibited in the attached photograph.  (*Id*. at PAGEID 88).  Defendant therefore contends that because "the physical evidence is clear" that the "water bottle cases were not stacked unreasonably high or even in the manner which plaintiff described[,]" "[s]ummary judgment is appropriate because [plaintiff's] speculation of what occurred is inadmissible under the physical evidence rule."  (*Id*. at PAGEID 88-89).

In response, plaintiff argues that the "physical facts" rule in inapplicable because "the photo in question fails to encompass the entire scene of the incident."  (Doc. 2 at PAGEID 100).  Plaintiff contends that the photograph "only encompasses a small area of the floor" and therefore, "does not prove [plaintiff's] testimony that the cases of water were stacked dangerously high—five feet four inches or more—'palpably untrue[.]'"  (*Id*.).

"The Physical Facts Rule provides that a witness's testimony that is positively contradicted by the physical facts cannot be given probative value by the court."  *Gordon v. Dollar Gen. Corp.*, No. 2:18-cv-939, 2020 WL 4784659, at *6 (S.D. Ohio Aug. 18, 2020) (citing *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802-03 (6th Cir. 2000)).  *See Jarvis v. Hasan*, No. 14AP-578, 2015 WL 2214748, at *14 (Ohio Ct. App. May 12, 2015) ("The physical facts rule is an exception to the axiom that the credibility of witnesses is a matter for the jury.").  Under the physical facts rule, where the "palpable untruthfulness of plaintiff's testimony is evident because the testimony is obviously inconsistent with, contradicted by, undisputed physical facts,

6

summary judgment is warranted notwithstanding testimony offered by the plaintiff." *Harris*, 201 F.3d at 803 (internal citations and quotations omitted). "The palpable untruthfulness of plaintiff's testimony requiring a trial court to take a case from the jury under the physical facts rule must be (1) inherent in the rejected testimony, so that it contradicts itself or (2) irreconcilable with facts of which, under recognized rules, the court takes judicial knowledge or (3) is obviously inconsistent with, contradicted by, undisputed physical facts." *McDonald v. Ford Motor Co.*, 326 N.E.2d 252, 255 (Ohio 1975) (internal citations omitted).

The physical facts rule "should not be applied lightly and application is still subject to finding the facts most favorable to the nonmoving party." *Gordon*, 2020 WL 4784659 at *6. *See Jarvis*, 2015 WL 2214748 at *16 ("the physical facts rule should be applied with caution because it constitutes a very narrow exception to the rule that disputed issues of fact are resolved by the trier of fact.").

Plaintiff testified that the water cases were "stacked very high on the shelves" (Doc. 23 at PAGEID 74) and were stacked taller than her height of five feet four inches. (*Id*. at PAGEID 76). The physical evidence at issue is a single photograph attached to defendant's motion for summary judgment allegedly depicting the scene where the incident had occurred. (Doc. 24 at PAGEID 86, 88). Defendant posits that the photograph "is clear that [the] water bottle cases were not stacked unreasonably high or even in the manner which plaintiff described." (*Id*. at PAGEID 88).

The physical facts rule is not applicable in this case. As an initial matter, defendant has not proffered admissible evidence in support of its motion for summary judgment. It is axiomatic that "[e]vidence must be authenticated prior to admission." *United States v. McPhearson*, 303 F. App'x 310, 317 (6th Cir. 2008). *See United States v. Simms*, 351 F. App'x

64, 68 (6th Cir. 2009) (quoting Fed. R. Evid. 901(a)) ("The Federal Rules of Evidence require evidence to be authenticated or identified through a showing 'sufficient to support a finding that the matter in question is what its proponent claims.'").  The photograph depicted in the body of defendant's motion for summary judgment has not been properly authenticated pursuant to Fed. R. Evid. 901(a).  Defendant failed to produce evidence sufficient to support a finding that the photograph accurately depicts the water aisle in that particular Wal-Mart location on the date and time of the incident involving plaintiff.  There exists no testimony of a witness with knowledge that the photograph "is what it is claimed to be" (Fed. R. Evid. 901(b)(1)), and there exists no affidavit or deposition testimony detailing *when* the photograph was taken and *what* specifically the photograph depicts.  Rather, defendant only contends that the photograph was "taken after the incident[.]"  (Doc. 24 at PAGEID 88).

In its reply in support of its motion for summary judgment, defendant argues that Eddie VanMatre ("VanMatre"), the store manager at the time of the incident, "responded to the accident" and "took the picture of the exact location where [plaintiff] claimed the case of water bottles fell onto her back."  (Doc. 30 at PAGEID 212).  However, nowhere in VanMatre's deposition testimony does it reflect that VanMatre was present at that particular Wal-Mart on April 30, 2019 and took a photograph of the scene of the incident.  Notably, VanMatre testified at his deposition that he was not sure if he was present at the store on the date of the incident and did not "recall that specific instance" involving plaintiff.  (Doc. 26-2, VanMatre Depo. at PAGEID 167).  Rather, VanMatre testified that he learned of the incident involving plaintiff by "an email that gives me an update on what happens in the store."  (*Id*.).  VanMatre stated that the email was the extent of his knowledge surrounding the incident involving plaintiff.  (*Id*.).  Additionally, the photograph, which appears to show a case of water on the ground next to the

shelving unit, lacks any indicia of reliability. Chadd Bowling ("Bowling"), a fifteen-year employee of Wal-Mart and the assistant store manager at the time of the incident, testified that when he arrived at the aisle where plaintiff was on the ground, "there [were] no stray [cases of] water" in the aisle (Doc. 26-1, Bowling Depo. at PAGEID 124-25), directly contradicting the photograph's depiction. Therefore, the photograph upon which defendant relies has not been properly authenticated and cannot be considered on summary judgment. *See Hartley v. St. Paul Fire & Marine Ins. Co*., 118 F. App'x 914, 921 (6th Cir. 2004) ("The district court was within its discretion when it refused to accept the unauthenticated photographs into evidence as authentication is a necessary precondition to admissibility.").

Moreover, "regardless of whether a document is authenticated for purposes of Federal Rule of Evidence 901, it must still be admissible." *Worthy v. Michigan Bell Tel. Co*., 472 F. App'x 342, 344 (6th Cir. 2012). Specifically, "[i]t is well established that a court may not consider hearsay when deciding a summary judgment motion." *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012). *See also Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) ("hearsay evidence cannot be considered on a motion for summary judgment."). "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802.

The photograph depicted within defendant's motion for summary judgment is hearsay under Fed. R. Evid. 801 because defendant is attempting to offer the photograph in support of its motion for summary judgment to prove the truth of the matter asserted, i.e., the depiction of the

scene of the incident involving plaintiff on April 30, 2019. Moreover, it does not appear that the photograph would satisfy any exceptions to the rule against hearsay under Fed. R. Evid. 803. *See Perkins v. Rock-Tenn Servs., Inc.*, 190 F. Supp. 3d 720, 731 (W.D. Mich. 2016), *aff'd*, 700 F. App'x 452 (6th Cir. 2017) (where the court excluded a "screenshot and explanatory text" in a summary judgment motion because the screenshot was an unsworn statement "from an unknown source purporting to establish the truth of the matter asserted" and no hearsay exceptions were applicable); *see also Tompkins-Wells v. Shelby Cty. Head Start*, No. 12-cv-3035, 2015 WL 1345254, at *12 (W.D. Tenn. Mar. 23, 2015) (declining to consider on summary judgment exhibit containing a page printed from the Internet and two photographs because exhibit was "not properly authenticated and contain[ed] inadmissible hearsay.").

Even if, however, the photograph was properly authenticated and admissible under an exception to the hearsay rule, the photograph submitted by defendant does not demonstrate "[t]he palpable untruthfulness" of plaintiff's testimony sufficient to grant defendant's motion for summary judgment based on the physical facts rule. *McDonald*, 326 N.E.2d at 255. Plaintiff testified in her deposition that the water bottle cases were stacked higher than five feet four inches, her own height. The photograph offered by Wal-Mart, which purportedly shows the water bottle cases stacked much lower, shows only a partial view of the shelving unit in question and fails to accurately and comprehensively encompass the entirety of the scene where the incident involving plaintiff had occurred. The photograph, which appears cropped, does not depict the shelving units actually above those holding the cases of water or encompass the entire scene of the incident. The frame of photograph omits the relevant five-foot, four-inch view which plaintiff testified about and only presents a fraction of the area where the incident

occurred. Given the limited view depicted in the photograph, the Court is unable to conclude that plaintiff's testimony is contradicted by undisputed physical facts.

In looking at the facts in the light most favorable to plaintiff, the Court finds that a genuine issue of material fact exists as to how high the cases of water were stacked at the time of the incident on April 30, 2019. Accordingly, the physical evidence rule is inapplicable to the facts of this case and defendant's motion for summary judgment on this basis is denied. *See Jarvis*, 2015 WL 2214748 at *16 ("For the physical facts rule to apply to mandate exclusion of certain testimony, the undisputed physical facts must affirmatively, and conclusively, demonstrate the incredulity of that testimony, which is not the case here."). *See also Nance v. Univ. Emergency Specialists, Inc.*, No. 91512, 2009 WL 1244151, at *5 (Ohio Ct. App. May 7, 2009) (holding that the "physical facts rule" was inapplicable because "although the endotracheal tube was found in the esophagus at the time of autopsy . . . the testimony of Dr. Galan established that the location of the tube could have changed following the movement of the decedent's head.").

### 2. Identification of how or why the water bottle case fell

Defendant argues that its motion for summary judgment should be granted because plaintiff "cannot ident[ify] or explain why the water bottle case fell without relying on speculation[.]" (Doc. 24 at PAGEID 84). Defendant contends that under Ohio law, plaintiff is required to identify or explain the reason "why the water bottles fell on her[.]" (*Id*. at PAGEID 90).

In opposition, plaintiff argues that the record contains evidence that plaintiff has "sufficiently identified the cause of her injuries: the case of water that fell due to being stacked dangerously high." (Doc. 25 at PAGEID 101). Plaintiff points to her deposition testimony

11

where she "stated several times that she was injured by a case of water that fell onto her back" and "that the cases of water were stacked taller than she is – at least five feet four inches high." (*Id*. at PAGEID 102-03).

Defendant's argument that plaintiff failed to identify how or why the water bottle case fell is grounded in the causation element of a negligence claim. *Hernandez-Butler*, 435 F. Supp. 3d at 830.[2] That is, "a plaintiff bears the burden of establishing that a defendant's breach of a duty was both the—or at least 'a'—but-for cause and proximate cause of the injuries that the plaintiff suffered." *Id*.

A plaintiff can meet her burden of proving the causation element by "specifically identify[ing] the proximate cause of [her] injuries." *Weber*, 2014 WL 4965940 at * 6. *See Id*. (the plaintiff "specifically identified the hazardous condition that caused his injury—the negligent stacking of the stovepipe parts higher than the guard walls on the wire bins."). *See also Cione v. K-Mart Corp*., No. C-970475, 1998 WL 226418, at *3 (Ohio Ct. App. May 8, 1998) ("the evidence supports the jury's factual finding that it was foreseeable to [the defendant] that an unrestrained piece of wheeled furniture displayed on a sagging shelf could roll off and cause injury."). Conversely, a plaintiff cannot rely on mere "speculation and the fact that the injury occurred" to prove this element. *See Lacy v. Wal Mart Stores*, No. 11 BE 32, 2012 WL 1307075, at *6-7 (Ohio Ct. App. Mar. 27, 2012) (granting summary judgment to defendant where store display shelf broke, causing monitor to fall on plaintiff, but plaintiff had no evidence as to why the shelf broke).

---

[2] *But see Tackett v. Wal-Mart Stores East, Inc*., No. 1:05-cv-560, 2007 WL 2668133, at *3 (S.D. Ohio Sept. 6, 2007) (where the court concluded that in a negligence case, the "plaintiff need only show that [the defendant's] negligent conduct, (i.e, alleged improperly stacked boxes), proximately caused her injuries. This is a question for the jury, and it cannot be resolved on summary judgment.").

Importantly, "in cases involving retail products that are stacked in an unsafe fashion and fall, *the unsafe stacking itself is a sufficient cause of the product falling*. No showing as to the force that actually triggered the fall is needed to establish causation." *Hernandez-Butler*, 435 F. Supp. 3d at 831 (internal citations omitted) (emphasis added). In *Hernandez-Butler*, the plaintiff asserted a negligence claim against the defendant when a box containing a sofa fell on her. *Id*. at 818-20, 822. The defendant filed a motion for summary judgment arguing, among other reasons, that summary judgment should be granted in its favor because the plaintiff "failed to provide any evidence of what actually caused the sofa box to fall, and thus cannot meet her burden of proof on causation." *Id*. at 830. In denying the defendant's motion for summary judgment, the court concluded that "Ohio law does not require [the plaintiff] to establish what initiated the fall. Rather, the evidence of the risk created by the positioning of the box (i.e., in such a manner that it could easily fall forward with a relatively light application of force), coupled with the fact that this exact risk materialized, and became the event that allegedly harmed [the plaintiff], could provide sufficient evidence for a jury to find causation, and thus suffices to allow [the plaintiff] to avoid summary judgment on that issue." *Id*. at 832 (citing *Cione*, 1998 WL 226418 at *2-3 and *Weber*, 2014 WL 4965940 at *6-7).

In support of its argument, defendant relies on *Lacy* where the court of appeals granted the defendant's motion for summary judgment because the plaintiff could not rely on mere speculation and the fact that he was injured to prove his negligence claim. *Lacy*, 2012 WL 1307075. There, the plaintiff was injured when a display shelf broke, causing a monitor to fall and strike him in the head and neck. *Id*. at *1. The plaintiff "did not know why the monitor fell" and "confirmed that all he knew was that he heard a sound, he looked up, and the monitor came

down." *Id*. The court granted the defendant's motion for summary judgment because the plaintiff "presented no evidence of [the defendant's] negligence beyond speculation. *Id*. at *7.

*Lacy*, however, is factually distinguishable from the facts of this case. In *Lacy*, the plaintiff failed to present *any* evidence of what caused the shelf to break, while here, plaintiff identified the hazardous condition that caused her injury—the case of water that fell because of the negligent stacking of the water bottle cases. (Doc. 2 at PAGEID 23; Doc. 23 at PAGEID 74-77; Doc. 25 at PAGEID 101-03). This case is analogous to *Hernandez-Butler* in that the risk created by the height of the water bottles (if plaintiff's testimony is believed), coupled with the fact that the risk of a falling water case materialized, is sufficient to send this case to a jury. Accordingly, in looking at the facts in the light most favorable to plaintiff, the Court concludes that plaintiff has presented "sufficient evidence for a jury to find causation" allowing plaintiff to avoid summary judgment on this issue at this juncture. *Hernandez-Butler*, 435 F. Supp. 3d at 832.

### 3. Open and obvious

Defendant argues that its motion for summary judgment should be granted because any danger to plaintiff posed by the water bottle cases was "open and obvious." (Doc. 24 at PAGEID 84, 91-93). Defendant contends that it owed no duty of care to plaintiff because the water bottle cases were "visible" and plaintiff acknowledges that she was aware that the water bottle cases were heavy and saw that they were dangerously stacked before she touched them. (*Id*. at PAGEID 91-93). Defendant specifically contends that it had no duty to warn of the alleged hazard because the water bottle cases "were not hidden, concealed, or undiscoverable upon ordinary inspection." (*Id*. at PAGEID 92). Defendant argues that "plaintiff knew the boxes were stacked in a dangerous condition, yet proceeded to stand directly in front of them." (*Id*. at

PAGEID 93). In opposition, plaintiff argues that the cases of water did not pose an open an obvious risk of harm because plaintiff "had simply bent down to get a case of water when another case fell and hit her in the back." (Doc. 25 at PAGEID 106).

"[A] shopkeeper is under no duty to protect business invitees from dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Zirkle v. Menard, Inc*., No. 5:19-cv-1489, 2020 WL 5423973, at *3 (N.D. Ohio Sept. 10, 2020) (internal quotations and citations omitted). *See Tackett*, 2007 WL 2668133 at *4 ("Pursuant to the open and obvious doctrine, an owner of a premises owes no duty to persons entering those premises regarding dangers that are open and obvious."); *Lang*, 909 N.E.2d at 123 ("Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises.") (quoting *Armstrong v. Best Buy Co., Inc*., 788 N.E.2d 1088, syllabus (Ohio 2003)). *See also Hernandez-Butler*, 435 F. Supp. 3d at 822 (internal quotations omitted) ("Ohio law holds that a store owner's duty of care does not include a duty to warn customers of, or protect customers from, any open and obvious dangers inside the store."). The open and obvious doctrine "concerns the first element of negligence law, the existence of a duty." *Leitch v. Wal-Mart, Inc*., No. 3:19-cv-235, 2020 WL 7398700, at *3 (S.D. Ohio Dec. 17, 2020) (quoting *Armstrong*, 788 N.E.2d at 1090). It also "obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong*, 788 N.E.2d at 1090. *See Weber*, 2014 WL 4965940 at *4 (internal quotations omitted) ("If the open and obvious doctrine applies, it acts as a complete bar to a claim of negligence.").

"An open and obvious hazard is one that is 'in plain view and is readily discoverable upon ordinary inspection.'" *Hernandez-Butler*, 435 F. Supp. 3d at 823 (quoting *Bittner v. Wal-Mart Stores EAC, Inc.*, No. 3:16-cv-151, 2017 WL 2633189, at *3 (S.D. Ohio June 19, 2017)).

Moreover, "[w]hen determining whether a hazard is open and obvious, the question 'is not whether [a plaintiff] observes the condition, but whether the condition is capable of being observed.'" *Hernandez-Butler*, 435 F. Supp. 3d at 823 (quoting *Nicoll v. Centerville City Sch.*, 102 N.E.3d 1212, 1216 (Ohio Ct. App. 2018). Said another way, hazards are open and obvious if it is "so objectively apparent that they serve their own warning and business invitees are expected to discover them and protect [themselves] against them." *Ganz v. Pappas Rest., Inc.*, No. 1:19-cv-235, 2020 WL 3050766, at *2 (S.D. Ohio June 8, 2020) (internal citations and quotations omitted). *See also White v. Menard, Inc.*, No. 2:19-cv-2243, 2020 WL 1814140, at *3 (S.D. Ohio Apr. 9, 2020) ("An open and obvious hazard is one that is neither hidden nor concealed from view and is discoverable through ordinary inspection."). The standard is objective, not subjective, and the "determinative issue is whether the condition is observable by an objective, reasonable person." *Gordon*, 2020 WL 4784659 at *4 (internal citations and quotations omitted). The determination of whether a certain danger is open and obvious "is often very fact-specific, and genuine issues of material fact may preclude summary judgment on the issue." *Hernandez-Butler*, 435 F. Supp. 3d at 823 (quoting *Weber*, 2014 WL 4965940 at *4).

Generally, it is "more likely" that a danger will be considered "open and obvious" if the individual was moving items around or rummaging through a display. *Weber*, 2014 WL 4965940 at *5 ("If [the plaintiff] was, in fact, rummaging around in the horizontal vent cap bin when the part fell, it is more likely that the danger will be deemed open and obvious. But if he did not touch anything in that particular bin, this becomes a much closer question. Even if the parts were precariously stacked, one would not necessarily expect one of them to fall unless someone did something to dislodge it."). *See also McGee v. Lowe's Home Improvement*, No. 06 JE 26, 2007 WL 2758668, at *4 (Ohio Ct. App. Sept. 21, 2007) (the court of appeals affirmed the

16

trial court's determination that the plaintiff's negligence claim was barred by the open and obvious doctrine because the plaintiff was "looking through the display" by "pushing the different flooring from side to side." The court found significant that "there always remains a possibility that too much fumbling around through merchandise can create an unstable situation where items may become loose or shift positions. That is precisely what appears to have happened in this case.").

Conversely, "[w]here reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Klauss v. Marc Glassman, Inc.*, No. 84799, 2005 WL 678984, at *3 (Ohio Ct. App. Mar. 24, 2005). *See Dillon-Garcia v. Marc Glassman, Inc.*, No. 86318, 2006 WL 302349 (Ohio Ct. App. Feb. 9, 2006) ("in viewing the evidence in a light most favorable to appellant, we cannot say that the danger of a stray can falling was open and obvious as a matter of law. We find that there is a question of fact for a jury to decide whether one could anticipate a stray can falling, on its own, from another part of the stack when appellant had successfully removed a can without affecting any of the cans in contact with it."); *Rengel v. Meijer Stores Ltd. P'ship*, No. E-12-050, 2013 WL 1190867, at *4 (Ohio Ct. App. Mar. 22, 2013) (holding that there was a question of fact as to whether a store's display of cantaloupes created an open and obvious hazard); *Lopez v. Home Depot, USA, Inc.*, No. L-02-1248, 2003 WL 1962360, at *2 (Ohio Ct. App. Apr. 25, 2003) (emphasis added) ("the potential hazard of having lumber fall *from an upper shelf* while someone is searching for wood *in a lower shelf* is not an open and obvious danger against which [the plaintiff] should have protected herself.").

There is no evidence in the record that plaintiff in this case moved the water cases around or looked through the display before she bent down to pick up her case of water. *See Lazzara v.*

*Marc Glassman, Inc.*, 667 N.E.2d 1275, 1277 (Ohio. Ct. App. 1995) (where the court held the open and obvious doctrine barred the plaintiff's negligence claim stemming from an injury sustained by stacked boxes of toilet tissue when the plaintiff "pulled a package of toilet tissue from the middle of the stack of boxes" even though the plaintiff "observed the boxes stacked too high and wondered to herself how employees of [the defendant] were able to stack them so high."). *See also Goodwin v. Marc Glassman, Inc.*, No. C.A. 19861, 2000 WL 960999, at *1 (Ohio Ct. App. July 12, 2000) (the court held that "a cereal box display transformed into an avalanche upon a customer simply because that individual pulled a box from a case within the stack is an open and obvious danger." The plaintiff "stated that she had noticed that the cases were stacked very high" but nevertheless "pulled the box from the center of the stack.").

Defendant argues that the danger was "open and obvious" because the "water bottle cases were not hidden, concealed, or undiscoverable upon ordinary inspection." (Doc. 24 at PAGEID 92). Defendant points to a single statement from plaintiff's deposition in support of this contention:

> Q You earlier said that you could see the cases of water prior to bending over to pick one up.
> A Yes.

(Doc. 23 at PAGEID 81). Defendant argues that the above passage proves that water bottle cases were "visible," and therefore, the hazard was "open and obvious." (Doc. 24 at PAGEID 92). The proper standard, however, is not whether the hazard was "visible" but "[t]he determinative issue is whether the condition is observable by an objective, reasonable person." *Gordon*, 2020 WL 4784659 at *4. *See also Weber*, 2014 WL 4965940 at *4 (citations omitted) ("The relevant question is whether the condition was observable, not whether the plaintiff actually observed it."). Plaintiff testified that a case of water hit her in the shoulder and back after she bent down

to pick up a case of water. (Doc. 23, Pltf. Depo. at PAGEID 73-77). Plaintiff also answered "No" to the following question: "Did you notice any issues with the cases of water bottles, such as one hanging off another one or being, you know, kind of messy, anything like that? Did you notice anything like that prior to you picking one up?" (*Id*. at PAGEID 76).[3]

Viewing the facts in the light most favorable to plaintiff, any hazard or condition presented in the water aisle on April 30, 2019 was not observable by an objective, reasonable person. *See Tackett*, 2007 WL 2668133 at *4 (denying the defendant's motion for summary judgment under the "open and obvious" doctrine because "genuine issues of material facts exist as to whether the boxes were stacked in a manner that would create an open and obvious danger."). Accordingly, the hazard was not open and obvious and defendant's motion for summary judgment is denied on this ground.

### 4. Notice of the hazard

Defendant argues that its motion for summary judgment should be granted because "it did not have actual or constructive notice of any hazard, so it did not breach its duty." (Doc. 24 at PAGEID 93). Defendant contends that plaintiff cannot prove that it created the hazard because plaintiff has no knowledge of "how the water bottles came to be stacked that way." (*Id*. at PAGEID 94). Defendant further contends that plaintiff "cannot rule out that a customer came by and changed the way the items were stacked by Wal-Mart." (*Id*.).

Plaintiff argues in opposition that a genuine issue of fact remains as to whether defendant created the hazard that allegedly injured plaintiff because "Wal-Mart employees are solely

---

[3] Defendant also argues that plaintiff "failed to ask anyone for help" even though plaintiff knew the water bottle cases were "heavy." (Doc. 24 at PAGEID 93). Defendant, however, has not cited any caselaw that requires a customer to request assistance for a "heavy" item. *See Rengel*, 2013 WL 1190867 at *5 (where the court held that "[t]here is at least a genuine issue of material fact as to whether it was reasonable for appellants to select cantaloupes from the table on their own without seeking employee assistance" where the "cantaloupes [were] placed on a relatively low display and were items that Meijer understood would be touched, handled, and sorted through by customers seeking to find the item of highest quality.").

responsible for bringing the cases of water out to the store floor and for maintaining them in a safe condition[.]" (Doc. 25 at PAGEID 108). Plaintiff contends that the depositions of VanMatre and Bowling demonstrate that Wal-Mart employees are responsible for bringing the pallets of the water from the back of the store, unwrapping the cases from the plastic, and placing the cases into the aisle. Plaintiff further contends that Wal-Mart employees are trained to abate any hazard that could arise if the cases of water become improperly positioned. (*Id.* at PAGEID 107-08). Plaintiff therefore argues that because Wal-Mart created the hazard, she does not need to also prove that Wal-Mart had knowledge of the hazard. (*Id.* at PAGEID 106).

Wal-Mart had a "duty to warn plaintiff of any latent or concealed defects or perils of which it knew or should have known." *Tackett*, 2007 WL 2668133 at *2. The standard under Ohio law for a business invitee to demonstrate that a storeowner breached its duty of care is well-established. The plaintiff must show:

1. That the defendant through its officers or employees was responsible for the hazard complained of; or

2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Holly v. Walmart Real Est. Bus. Tr.*, 262 F. Supp. 3d 532, 536 (N.D. Ohio 2017) (citing *Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943)). *See also Mosholder*, 2019 WL 1116009 at *4; *Hernandez-Butler*, 435 F. Supp. 3d at 827.

However, "plaintiff need not present evidence to show that Wal-Mart had actual or constructive notice or knowledge of the hazardous condition. . . . Rather, proof that the operator or his employees *created the condition* is proof that he had notice of it." *Tackett*, 2007 WL

2668133 at *2 (emphasis added) (citations omitted). *See also Hernandez-Butler*, 435 F. Supp. 3d at 827 ("Ohio courts hold that a property owner is liable for hazards that its own employees create."). *Tackett* is instructive in this regard.

In *Tackett*, the plaintiff suffered an injury after a box containing a bicycle fell from a freestanding display. *Tackett*, 2007 WL 2668133 at *1. The boxes were stacked approximately twelve feet high—seven feet higher than the store's general rule that boxes should not be stacked taller than five-feet. *Id*. The plaintiff sustained injuries when a box "struck [her] in the head, shoulders, and arm by a box that had fallen from the top of the display[.]" *Id*. In denying the defendant's motion for summary judgment, the court found that because "Wal-Mart was responsible for creating the bicycle display and for stacking the boxes," "genuine issues of material facts exist as to whether or not the boxes were stacked higher than five feet, and whether or not the Wal-Mart's stacking of the boxes created a hazardous condition, thereby constituting proof that Wal-Mart had notice of the hazardous condition." *Id*. at *3. *See also Hernanzdez-Butler*, 435 F. Supp. 3d at 827-28 (concluding that a jury could find that the storeowner was responsible for the placement of boxes that created the hazard that formed the basis for the plaintiff's negligence claim).

Although defendant argues that plaintiff "has no idea how the water bottles came to be stacked that way" and therefore "she cannot prove that Wal-Mart created the hazard," (Doc. 24 at PAGEID 94), it is undisputed that Wal-Mart employees are responsible for putting the water bottle cases into the water aisle. VanMatre specifically testified that "we [Wal-Mart employees] pull it out with a pallet jack out from the receiving docks to the floor. Fix the area so that the pallet can slide underneath the steel – the shelving, and plant it down right there and pull it back

out." (Doc. 26-2, VanMatre Depo. at PAGEID 159).  VanMatre explained that the cases of water are "solidly stacked" when they come off the truck.  (*Id*. at PAGEID 160).

Further, there exists a genuine issue of material fact as to the height that the water bottles were stacked in the store that day.  (*See* Doc. 26-1, Bowling Depo. at PAGEID 117-18, 130-32; Doc. 26-2, Vanmatre Depo. at PAGEID 152-53, 161).  Accordingly, in looking at the facts in the light most favorable to plaintiff, a jury could reasonably conclude that Wal-Mart created the condition that forms the basis of plaintiff's negligence claim.  *Tackett*, 2007 WL 2668133 at *3.

**IV.  Conclusion**

Viewing the facts in the light most favorable to plaintiff, the Court finds that genuine issues of material fact exist in this case.  Therefore, the Court denies defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED THAT:**

Defendant's motion for summary judgment (Doc. 24) is **DENIED**.

Date:  3/25/2021

Karen L. Litkovitz
Chief United States Magistrate Judge